UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAYMOND A. FORSMAN,

                Plaintiff,

   v.

PORT OF SEATTLE, *et al*,

                Defendants.

Case No. C19-2050-RSL-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This matter is before the Court on Defendants Port of Seattle, Ray Giometti, Delmas Whittaker, Ross Perry, and Stephan Aarons' ("Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. (Dkt. # 22).) Plaintiff Raymond A. Forsman ("Plaintiff"), proceeding *pro se*, filed a response.[1] (Resp. (dkt. # 24).) Defendants did not file a reply. Having considered the parties' submissions, the balance of the record, and the applicable law, the Court recommends that Defendants' motion to dismiss be GRANTED, and Plaintiff's amended complaint and this action be DISMISSED without prejudice.

---

[1] Plaintiff's response does not substantively address Defendants' motion to dismiss. Rather, Plaintiff takes issue with Defendants' assertion that regardless of the factual background, Plaintiff has failed to state a claim. (Resp. at 1 ("[Counsel] is actually saying 'even if some of the stuff I wrote is untrue 12 B 6 should proceed.'").)

REPORT AND RECOMMENDATION - 1

## II. BACKGROUND

Plaintiff filed four complaints in this matter. (Dkt. ## 1, 4, 25, 27.) He filed the original complaint on December 17, 2019, alleging he was denied the opportunity to work on his fishing boat at the Fishermen's Terminal with services, such as electricity, that were provided to other tenants. (Compl. (Dkt. # 1).) Plaintiff also alleged he was forced to "get rid" of a boat or have it towed away despite other trailered boats being allowed to remain. (*Id.*) Plaintiff alleges that as a result, he was unable to fish. (*Id.*) Plaintiff named as Defendants the Port of Seattle (the "Port"), Ross Perry, Ray Giometti, and Delmas Whittaker. (*Id.*) Plaintiff cited 42 U.S.C. § 1983 as the basis for his claims. (*Id.*)

Plaintiff filed an amended complaint on January 7, 2020, before Defendants filed their answer. (Am. Compl. (Dkt. # 4).) Plaintiff named the same Defendants with the addition of Stephen Aaron. (*Id.*) Plaintiff also filed a praecipe on February 18, 2020 that elaborated on the claims in his first amended complaint. (Praecipe (Dkt. # 11).) According to these pleadings, Plaintiff was (1) denied the opportunity to work on his fishing boat even though other tenants were extended this opportunity; (2) prevented from getting repair work done on his fishing boat; (3) forced to remove his skiff from the Port despite other skiffs or trailered boats being allowed to remain; and (4) subjected to moorage charges for a vessel he did not own. (Am. Compl. at 4; Praecipe at 2.) Plaintiff believes the stress resulting from these claims caused him to suffer a heart attack. Plaintiff cited the Treaty of Point Elliott, 42 U.S.C. § 1983, and 18 U.S.C. §§ 241, 242 as bases for his claims. (Am. Compl. at 5.)

Plaintiff filed a second amended complaint on August 17, 2020, after Defendants filed the instant motion to dismiss. (Dkt. # 25.) Plaintiff named only Jeremy Culumber, Defendants' counsel in this matter, and Ann Purcell, counsel for the Port, as Defendants. (*Id.*) Plaintiff alleges

1   Mr. Culumber made misleading statements in the instant motion to dismiss and cited 18 U.S.C. §

2   1001 and "bar oath of office Art 5" as bases for his claim.[2] (*Id.*) Attached to the complaint are

3   several copies of a letter sent to the Port from Plaintiff's former attorneys dated June 27, 2019.

4   (*Id.*) The letter appears to be notice that Plaintiff alleged Defendants discriminated again him in

5   violation of 42 U.S.C. § 1983. (*Id.* at 6-15.)

6        Plaintiff filed a third amended complaint on September 23, 2020 naming only the Port as

7   a Defendant. (Dkt. # 27.) This pleading also alleges Mr. Culumber made misleading statements

8   in the instant motion to dismiss. (*Id.*) Plaintiff claimed Mr. Culumber committed perjury

9   pursuant to 18 U.S.C. § 1621. (*Id.* at 6.) Plaintiff also cited 18 U.S.C. § 1001 as a basis for his

10  claim. (*Id.*) Plaintiff attached to the pleading what appears to be monthly statements from the

11  Fishermen's Terminal, a copy of the motion to dismiss with notes that presumably denote what

12  Plaintiff believes to be misleading statements, various email correspondence, research regarding

13  the definition of perjury, a Port tort claim form filled out by Plaintiff on August 28, 2020, and

14  photographs of Plaintiff's boats. (*Id.* at 7-33.)

15                             **III.   DISCUSSION**

16      **A.   Amended Complaints**

17       As an initial matter, the Court must determine which pleading is the operative complaint.

18  Pursuant to Rule 15(a)(1), a party is permitted to amend its pleading once as a matter of course

19  within specified time periods. As relevant here, Plaintiff timely filed his first amended complaint

20  as a matter of course within the allotted time period. *See* Fed. R. Civ. P. 15(a)(1)(A). However,

21  Plaintiff was required to obtain written consent from Defendants or seek the Court's permission

22

23  [2] The Court notes Plaintiff also initiated an action against Mr. Culumber and the Port in which Plaintiff alleges Mr. Culumber made misleading statements in the motion to dismiss in this matter. *Forsman v. Culumber, et. al.,* C20-1266-RSL-MLP.

REPORT AND RECOMMENDATION - 3

to amend his complaint a second or third time. *See* Fed. R. Civ. P. 15(a)(2). It does not appear from the record that Plaintiff did either.

The Court may construe Plaintiff's proposed second and third amended complaints as requests for leave to amend, particularly when a Plaintiff is *pro se*. *See Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020). Under Rule 15, the court should "freely give" leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Five factors are used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the party has previously amended its pleading. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

Here, it does not appear Plaintiff seeks to amend his complaint in bad faith. However, Plaintiff filed the proposed amended complaints after Defendants submitted their answer, after the deadline for amended pleadings, and after the instant motion to dismiss. Plaintiff has not provided a reason for the delay in his submissions. Plaintiff also previously amended his complaint. Further, Plaintiff's amended complaints raise claims that were not known to Defendants before they filed the instant motion to dismiss. Significantly, the proposed amended complaints allege Mr. Culumber made misleading statements in violation of 18 U.S.C. § 1621 and 18 US Code 1001.[3] Pursuant to 18 U.S.C. § 1621, whoever takes an oath to truthfully testify "before a competent tribunal … of the United States" and "willfully and contrary to such oath states or subscribes to any material matter" which they do not believe to be true is guilty of perjury, and 18 U.S.C. § 1001 criminalizes false statements made to the federal government. To the extent Plaintiff attempts to make a claim under either of these statutes, he lacks standing to

---

[3] As noted above, Plaintiff's proposed second amended complaint also cites to "bar oath of office Art 5." It is not clear to the court what this is in reference to.

REPORT AND RECOMMENDATION - 4

bring them; there is no private right of action under these criminal statutes. *See United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("[T]he United States Attorney is responsible for the prosecution of all criminal cases within his or her district."); *Lee v. United States Agency for Int'l Dev.*, 859 F.3d 74, 76 (D.C. Cir. 2017) (no private right of action under 18 U.S.C. § 1001). Thus, granting Plaintiff's request for leave to amend his complaint to either of the proposed amended complaints would be futile.

Accordingly, Plaintiff's request for leave to amend his complaint to the second or third proposed amended complaints is denied. Plaintiff's properly submitted first amended complaint is the operative pleading. (Dkt. # 4.)

### B. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted). The Ninth Circuit, however, carves out certain exceptions to this rule. For example, a court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading[.]"

*Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).[4]

**C.    Denial of Services**

Plaintiff alleges he was denied the opportunity to work on his fishing boat with services, "AKA electricity," that were afforded to other tenants doing similar work. (Am. Compl. at 6.) Defendants assert Plaintiff's claim relates to his attempts to bring non-functioning boats on trailers to commercial vessel loading areas to conduct long-term repairs, and that he has been previously informed the Fishermen's Terminal is not equipped for such repair work and does not provide electrical services for repair work. (Mot. at 2.) Defendants also argue Plaintiff's claim of denial to electrical power for boat repairs does not implicate a federal right under the United States Constitution, or any other federal statute. (*Id.*)

Defendants' motion to dismiss presents facts that are outside the pleadings and therefore are not considered by the Court. However, the Court agrees that based on the facts contained in the amended complaint, Plaintiff has not stated an actionable federal claim. Plaintiff's claim

---

[4] As noted above, Plaintiff also cited the Treaty of Point Elliott and 18 U.S.C. §§ 241, 242. For the reasons discussed below, this treaty and federal statutes do not apply.

concerns access to electricity service that apparently was available to other tenants. Plaintiff's general assertions that he was denied this service does not adequately allege that a constitutional or federal right was violated, nor does he describe which Defendant, if any, caused any such violation, except perhaps the Port. Accordingly, Plaintiff has failed to state a claim.

### D.   Denial of Boat Repair

Plaintiff also alleges he was forced to remove a skiff from the Port even though other skiffs or "boats on trailers" were allowed to remain. (Praecipe at 2.) Defendants again raise facts outside the amended complaint in response. (Mot. at 3.) However, Defendants also assert that similar to the access to electricity claim, Plaintiff has not shown how denial of the opportunity to do repair to boats in a commercial fishing terminal implicates any federal rights. (*Id.*) For the reasons discussed above with regard to Plaintiff's access to electricity claim, the Court finds Plaintiff has failed to state an actionable claim.

### E.   Moorage Charges

Plaintiff claims the Port subjected him to moorage charges for a vessel that he did not own. (Praecipe at 2.) Defendants argue that even if the Port were improperly charging Plaintiff moorage fees for boats not titled in his name, this claim also fails to state a federal cause of action. (Mot. at 4.) Similar to Plaintiff's other claims, the Court finds Plaintiff's allegations that he was charged improper moorage fees fails to allege a violation of a constitutional or federal statutory right.

### F.   Treaty and Statutes

As noted above, Plaintiff cites to the Treaty of Point Elliott (1855), 42 U.S.C. § 1983, and 18 U.S.C. §§ 241, 242 in support of his claims. For the reasons discussed below, the treaty and federal statutes do not provide a basis for Plaintiff's claims.

The Treaty of Point Elliott (1855) is a treaty between the United States government and Puget Sound region tribes that established fishing rights and provides, in relevant part, "The right of taking fish, at all usual and accustomed grounds and stations, is further secured to said Indians, in common with all citizens of the Territory …." *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n,* 443 U.S. 658, 661–62, 674 & n.21 (1979), *modified on other grounds,* 444 U.S. 816 (1979). Here, Plaintiff has not alleged that any of the named Defendants have authority over fishing activity on any grounds or stations applicable to the Treaty of Point Elliott. Plaintiff's claims also relate to access to electricity services, the opportunity to repair his boat, and moorage charges from the Port, not the denial of any right to fish. Further, as asserted by Defendants (Mot. at 4), even if the Treaty of Point Elliott were at issue, the Ninth Circuit has found there is no basis for implying a right of action for damages from a non-contracting party to a treaty. *Skokomish Indian Tribe v. U.S.*, 410 F.3d 506, 514 (9th Cir. 2005). Here, Plaintiff seeks damages and has not shown Defendants were parties to the Treaty of Point Elliott.

42 U.S.C. § 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144, n.3 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor,* 490 U.S. 386, 394 (1989); *Baker,* 443 U.S., at 140. As discussed above, Plaintiff has not identified any constitutional or federal right that was violated and therefore his claims are not actionable under § 1983.

Lastly, Plaintiff may not seek relief under 18 U.S.C. §§ 241 and 242 in this civil action. These federal criminal statutes prohibit conspiracies to deprive another of his or her civil rights, § 241, and the actual deprivation of another's civil rights, § 242. They provide no basis for civil

liability. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ). Accordingly, the alleged violation of federal criminal statutes fails to state a claim upon which relief may be granted.

### G. Leave to Amend

When a court dismisses a *pro se* plaintiff's complaint, the court must give the plaintiff leave to amend unless it is absolutely clear that amendment could not cure the defects in the complaint. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). However, a *pro se* plaintiff does not enjoy unlimited opportunities to amend his complaint. *See McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996) (affirming the district court's dismissal of the plaintiff's third amended complaint without leave to amend when it failed to cure the pleading deficiencies). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc.*, 866 F.2d at 1160.

As discussed above, the Court denies Plaintiff's second and third proposed amended complaints because, among other reasons, it would be futile.[5] However, the Court cannot say at this time that Plaintiff cannot cure the deficiencies in his amended complaint and therefore recommends Plaintiff be granted leave to amend. Should Plaintiff elect to file an amended complaint, but fail to cure the identified deficiencies, the Court will recommend dismissal without leave to further amend. Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original pleading. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, any amended complaint must clearly identify the Defendant(s), the

---

[5] Defendants Jeremy Culumber and Ann Purcell were added as Defendants when Plaintiff filed his second proposed amended complaint. All Defendants except the Port were terminated when Plaintiff filed his third proposed amended complaint. Should this Report and Recommendation be adopted, the Clerk's office should be directed to modify the docket to reflect the Defendants in this matter are those Defendants named in the amended complaint (dkt. # 4).

constitutional or federal statutory claim(s) asserted, the specific facts that Plaintiff believes support each claim, and the specific relief requested.

## IV. CONCLUSION

For the forgoing reasons, the Court recommends the Defendants' motion to dismiss (dkt. # 22) be GRANTED and this matter DISMISSED without prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 5, 2020**.

The Clerk is directed to send copies of this order to the parties and to the Honorable Robert S. Lasnik.

Dated this 21st day of October, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge